## Smith v. Piper, Appellant.

*Wills—Construction—"Die without issue"—Presumptions—Act of July 9, 1897, P. L. 213—Conditional limitations—Fee cut down by subsequent clauses.*

1. The rule of law prior to the Act of July 9, 1897, P. L. 213, was that in the absence of any indication in the will to the contrary the words "die without issue" imported an indefinite failure of issue, and the effect of the act is to change that rule so that in the absence of

other indications in the will the words are to mean a definite failure of issue in the lifetime or at the death of the person intended.

2. A will must be construed as an entirety, so that, if possible, every part of it may take effect. Hence, the independent meaning of one provision must often be modified by reading it in connection with others. If a testator in one part of his will give to a person an estate of inheritance of lands, or an absolute interest in personalty, and in subsequent passages unequivocally shows that he means the devisee or legatee to take a lesser interest only, the prior gift is restricted accordingly. Subsequent provisions will not avail to take from an estate previously given qualities that the law regards as inseparable from it, as, for example, alienability; but they are operative to define the estate given, and to show that what without them might be a fee was intended to be a lesser right.

3. A testator after devising to his two nieces an undivided one-half interest in certain real estate "unto them, their heirs and assigns forever" provided that "The above devises of real estate to . . . . my nieces . . . . are to become absolute to them and their heirs whenever the said persons have married and have issue born, but should . . . . my said nieces . . . . die without lawful issue, I direct that the above real estate . . . . shall descend to and vest in the heirs of" a third party; "it being my desire that should either" of my nieces "die without lawful issue, the property which I have devised to them or either of them, should go to the heirs of the above named" third party. *Held*, (1) that the words "die without lawful issue" must be construed to mean a failure of issue in the lifetime of the nieces; (2) that the nieces took a conditional fee with a limitation over, by way of an executory devise, and so long as they remained unmarried and without issue they would not have an absolute fee and could not, therefore, convey a fee simple title.

Submitted March 13, 1911. Appeal, No. 196, Oct. T., 1910, by defendant, from judgment of C. P. Armstrong Co., Dec. T., 1910, No. 2, for plaintiffs on case stated in suit of Laura Smith and Clara Smith v. W. H. H. Piper. Before Fell, C. J., Brown, Mestrezat, Potter, Elkin, Stewart, and Moschzisker, JJ. Reversed.

Case stated to determine the marketable title to real estate. Before Patton, P. J., without a jury.

From the case stated it appeared that the plaintiffs claimed title in fee simple under the will of J. R. Smith, deceased, and that they contracted to sell such an interest

in the land to the defendant. The material portions of the will are set forth in the opinion of the Supreme Court.

The court entered judgment for plaintiffs on case stated. Defendant appealed.

*Error assigned* was the judgment of the court.

*Floy C. Jones* and *Harry A. Heilman,* for appellant. —The Act of July 9, 1897, P. L. 213, changed the presumption which formerly was in favor of an indefinite failure of issue, and substituted therefor a statutory presumption that in the absence of words indicating a contrary intent, a definite failure is to be presumed: Lewis v. Link-Belt Co., 222 Pa. 139; Daniels' Est., 27 Pa. Superior Ct. 358.

*J. H. Painter* for appellees, cited: Siegwarth's Est., 33 Pa. Superior Ct. 622; Ault v. Karch, 220 Pa. 366; Mayer v. Walker, 214 Pa. 440; Robinson v. Jones, 222 Pa. 56.

OPINION BY MR. JUSTICE POTTER, April 10, 1911:

This case was argued early in the present term. An opinion upon the questions presented was prepared and handed down by the present writer. But in construing the clauses of the will involved, through inadvertence, the effect of the Act of Assembly of July 9, 1897, P. L. 213, was not considered. The purpose of that act, as set forth in the title, is to declare the construction of words in a deed, will or other instrument, importing a failure of issue. As counsel had not cited the statute, nor referred to it in their briefs of argument, the case was, at the suggestion of the court, set down for reargument, and the questions involved have been carefully reconsidered.

It appears from the record that in the seventh clause of his will, J. R. Smith devised to his nieces, Laura Smith and Clara Smith, an undivided one-half interest in the two houses and lots on Grant street, in the borough of Manorville, Armstrong county, Pennsylvania, known as

the Smith-Piper property, unto them, their heirs and
assigns forever.   In a subsequent clause of the will, the
eleventh, he further provided that "The above devises
of real estate to my grandson, R. P. Foltz, and to my
nieces Laura and Clara Smith, are to become absolute
to them and their heirs whenever the said persons have
married and have issue born, but should either my grand-
son, R. P. Foltz, or my said nieces, Laura Smith and
Clara Smith, die without lawful issue, I direct that the
above estate real so bequeathed to them shall descend to
and vest in the heirs of Joseph Fichthorn, Rosswell Fich-
thorn and Louis Fichthorn, M. D., share and share alike;
that is to say, to the heirs of each of the above named,
the undivided one third part, it being my desire that
should either of the above devisees, to wit, R. P. Foltz,
Laura Smith and Clara Smith, die without lawful issue,
the property which I have devised to them or either of
them, should go to the heirs of the above named Joseph,
Rosswell and Louis Fichthorn."

In determining whether the limitation over was to
take effect upon a definite or indefinite failure of issue in
the first takers, the words to be considered are "but
should . . . . my nieces, Laura Smith and Clara Smith,
die without lawful issue," etc.   These words and their
equivalents have been adjudged again and again to im-
port a general and indefinite failure of issue.   See Vaughan
v. Dickes, 20 Pa. 509, where WOODWARD, J., cites Ch.
Kent, 4 Com. 276, as authority for the statement that the
English cases have been uniform "From the time of the
year-books down to the present day, in the recognition of
the rule of law, that a devise in fee with a remainder over,
if the devisee dies without issue or heirs of the body, is a
fee cut down to an estate tail, and the limitation over is
void by way of executory devise as being too remote, and
founded on an indefinite failure of issue.   Wherever an
executory devise is limited to take effect after a dying
without heirs or without issue, subject to no other restric-
tion, the limitation is void, for the policy of our law will

not suffer property to be tied up and rendered unalienable in expectation of such remote contingencies: Fearne on Remainders, 445." And in the case of Ray v. Alexander, 146 Pa. 242, where the devise over was made to depend upon the death of testator's daughter Elizabeth, "without leaving lawful issue," this court said that the phrase used, "according to the established interpretation of such expressions in a will, means a general, indefinite failure of issue, and not a failure at the death of the first taker."

But this rule of law was changed by the Act of July 9, 1897, P. L. 213, which provides in the first section, "that in any gift, grant, devise or bequest of real or personal estate, the words 'die without issue,' or 'die without leaving issue,' or 'have no issue,' or any other words which may import either a want or failure of issue of any person in his lifetime, or at the time of his death, or an indefinite failure of his issue, shall be construed to mean a want or failure of issue in the lifetime or at the death of such person, and not indefinite failure of his issue, unless a contrary intention shall appear by the deed, will or other instrument in which such gift, grant, devise or bequest is made or contained." The constitutionality of this act was upheld in Dilworth v. Land Company, 219 Pa. 527, where the intention and effect of the statute was elaborately considered by Judge SHAFER, in an opinion adopted by this court. While admitting that the phraseology of the act is peculiar and in a sense ambiguous, it was there said (p. 531): "The act, therefore, appears to mean that if words are used which in themselves leave it doubtful whether the failure of issue intended is definite or indefinite, they shall mean a definite failure of issue, unless something else in the instrument shows that they are not so intended. The words of the will in this case, 'in default of issue of my said daughter,' are in themselves applicable to a definite or to an indefinite failure of issue and should be applied to either as the intention of the testator should appear from the will. They are, therefore, words which in the language of the act may import either

a failure of issue of the daughter at her death or an indefinite failure of her issue. The rule of law prior to the act was that in the absence of any indication in the will to the contrary these words imported an indefinite failure of issue, and the effect of the act is to change that rule so that in the absence of other indications in the will the words are to mean a definite failure of issue." And in Lewis v. Link-Belt Co., 222 Pa. 139, 141, Mr, Chief Justice MITCHELL said: "It is notable that an act making so serious a change in the previous law has received so little attention as the Act of July 9, 1897, P. L. 213. It entirely changes the presumption which formerly was in favor of an indefinite failure of issue and substitutes a statutory presumption that, in the absence of words indicating contrary intent, a definite failure is to be presumed. . . . This is in accordance with the actual intent in the vast majority of cases and is a legislative step in the direction in which this court has been tending, to restore to its proper place the cardinal rule that actual intent is to prevail."

In the present case, as the testator directed that should his nieces Laura Smith and Clara Smith "die without lawful issue," the property devised to them, or either of them, should go elsewhere, we must, under the plain terms of the act, construe the phrase "without lawful issue," to mean a failure of issue in the lifetime of Laura Smith and Clara Smith. That is, as a definite failure of issue, the precise time fixed by the will for the failure of issue being at the date of the death of Laura Smith and Clara Smith. They cannot, therefore, be regarded as taking an estate tail, enlarged to a fee simple. As the limitation over was to take effect on the failure of issue within a given time, "then the limitation over will not raise an estate in tail by implication in the prior taker, but he will have a life estate with the limitation over of a springing interest or a fee with a conditional limitation over, as the case may be:" Smith on Executory Interests, 301. The devisees here take a fee with a conditional limitation

over, by way of an executory devise to the Fichthorn heirs. So long as they remain unmarried and without issue, they will not have an absolute fee, and cannot therefore convey a fee simple.

But another question is raised by this appeal. The court below held that in the seventh clause, the testator gave to his nieces an estate in fee simple which vested in them immediately upon the death of testator, and that this estate was not postponed by the language of the subsequent clause, which provided that the devises should become absolute whenever the devisees should marry and have issue born; and that if they should die without issue, the real estate so bequeathed should go elsewhere. Was the court below justified in this conclusion? We think not. In order to ascertain the intention of the testator, the whole will must be read, and if the intention to restrict a gift is clear, the restriction must be given effect. Thus, in Sheets' Est., 52 Pa. 257, Mr. Justice STRONG said: "A will must be construed as an entirety, so that, if possible, every part of it may take effect. Hence, the independent meaning of one provision must often be modified by reading it in connection with others. . . No principle is better settled than that if a testator in one part of his will give to a person an estate of inheritance of lands, or an absolute interest in personalty, and in subsequent passages unequivocally shows that he means the devisee or legatee to take a lesser interest only, the prior gift is restricted accordingly. Subsequent provisions will not avail to take from an estate previously given qualities that the law regards as inseparable from it, as, for example, alienability; but they are operative to define the estate given, and to show that what without them might be a fee, was intended to be a lesser right."

In Ulrich v. Merkel, 81 Pa. 332, there was a devise of a farm to testator's son and his heirs. In a subsequent clause of the will testator provided that none of his children should have a right to sell or assign the land or property devised to them, nor to incumber it with debts or

liens, "but the lands shall remain free for their children or heirs; and they, my said children, shall have the use, income and profits of the said land and farms during their lifetime." By another clause he gave his children power to dispose by will of the lands devised to them. It was held that the son took a life estate only. This was followed, and the reasons for its affirmance were set forth at length, in Urich's Appeal, 86 Pa. 386, where the syllabus reads: "Although a fee is given in the first part of a will, it may be restrained by subsequent words so as to convert it into a life estate." And in Livezey's App., 106 Pa. 201, Ulrich v. Merkel, 81 Pa. 332, was again expressly approved and followed. In the comparatively late case of Shower's Est., 211 Pa. 297, our Brother MESTREZAT. said: "It is settled by our cases that an estate of inheritance in real estate or an absolute interest in personalty given in a will may be reduced to a lesser estate if the subsequent language of the instrument unequivocally shows that such was the intention of the testator."

In 1 Jarman on Wills (6th Eng. ed., 1910), 565, 566, the principle is thus stated: "If a testator in one part of his will gives to a person an estate of inheritance in lands, or an absolute interest in personalty, and in subsequent passages unequivocally shows that he means the devisee or legatee to take a life interest only, the prior gift is restricted accordingly. It must be borne in mind, however, that the rule only applies where the later gift shows with reasonable certainty that the testator did not mean the prior gift to take effect according to its terms."

In the present case, can it be said that there is any lack of clearness in the expressed intention of the testator, that these devisees should not have an absolute title to the real estate in question, until they married and had issue born? No one can look at clause eleven without being satisfied that such was testator's purpose. Not once, but twice, and yet a third time, does he give expression to his intention in this respect. After directing that the Smiths should have the absolute title, whenever they married

and had issue, he further gives positive direction that should they die without lawful issue, the real estate shall descend to and vest in the heirs of the Fichthorns. And again does he repeat his direction, so that there shall be no misunderstanding of his meaning, in these words: "It being my desire that should either of the above devisees die without lawful issue, the property which I have devised to them or either of them, should go to the heirs" of the Fichthorns. Reading the two sections of the will together, no inference can fairly be drawn from the language of the testator, than that he intended to give a smaller estate than the meaning of the words of the gift, standing alone, as set forth in sec. 7, would import. That is, he makes it appear clearly that the estate he is giving is a conditional fee, not to become absolute until such time as the devisees marry and have issue born. The language of sec. 11 is, we take it, the defining of the estate given, and is not the imposing of a restraint upon an estate already given.

Being of the opinion that the plaintiffs are not the owners of a fee simple in the property in question, the assignment of error is sustained; and the judgment of the court below is reversed, and judgment is hereby entered for defendant.